CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 08 2016

JULIA C. DUDLEY, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DM, et al., | ) |
| | ) Civil Action No. 3:16-CV-00005 |
| Plaintiffs, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| LOUISA COUNTY DEPARTMENT | ) Hon. Glen E. Conrad |
| OF HUMAN SERVICES, et al., | ) Chief United States District Judge |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiffs filed this action against defendants Louisa County Department of Human Services (the "Department") and Vicke Nester, alleging claims under 42 U.S.C. § 1983 and state law. The case is presently before the court on defendants' motion to dismiss. For the following reasons, the court will grant the motion.

**Factual Background**

The following facts, taken from plaintiffs' complaint, are accepted as true for purposes of the motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Plaintiff DM is a minor and the adopted child of plaintiffs JR and AER. Between 2006 and 2009, DM was sexually abused by his birth mother's ("MB") boyfriend, Daniel "Fluffy" Delashmit. DM was between the ages of four and seven at the time of the abuse and lived with MB, Delashmit, and their roommate, Jacob Williams. Both MB and Williams were aware of the abuse, but did not report it to the authorities or try to stop it. Delashmit told DM that he would kill him if he ever revealed the abuse to anyone.

In 2009, the Department investigated MB for suspected child abuse and neglect. On December 7, 2009, the Department removed DM from MB's custody and placed him in foster

care with JR and AER, who eventually adopted DM.

Thereafter, DM revealed the sexual abuse to JR and AER, who reported it to the Department on November 23, 2010. On January 24, 2011, the Department found that the sexual abuse allegations against Delashmit were "Founded, Level 1, Sexual Abuse of [DM]." Compl. ¶ 41. Delashmit was given a written disposition of his case and a notice of his right to appeal the findings; Delashmit did not file an appeal.

DM required ongoing counseling to help him cope with emotional trauma as a result of the abuse. At one point during a counseling session, he again revealed that he had been sexually abused. The counselor reported the abuse to the Department on February 23, 2013. The Department sent Delashmit a written notice regarding the allegation. On April 14, 2013, the Department found that the sexual abuse allegations against Delashmit were "founded" and sent Delashmit a written decision letter. Id. ¶ 53.

On April 23, 2013, Delashmit and Williams requested that the Department provide them with all records concerning DM's sexual abuse allegations. Between April 23, 2013 and June of 2013, the Department turned over several documents to Delashmit and Williams. Specifically, plaintiffs allege that the unredacted materials contained their personal information, as well as information regarding JR and AER's five children, the names of the individuals who reported the sexual abuse allegations to the Department, details regarding the nature of the counseling services provided to DM, DM's sexual abuse allegations, and social security numbers for various individuals. On May 6, 2013, Vicke Nester, who worked as a Unit Manager at the Department, advised AER that Delashmit and Williams had received certain records pertaining to the sexual abuse allegations. During that conversation, AER expressed her concerns with the disclosure, but Nester advised that the practice was "normal." Id. ¶ 60. On May 15, 2013, the Department

2

informed Delashmit and Williams that the abuse allegations against Delashmit had been determined to be unfounded, and that Delashmit had the "right to access the information about [himself] which is in the record, by written request." Id. ¶ 61.

On January 18, 2016, plaintiffs filed this action against the Department and Nester, alleging violations of 42 U.S.C. § 1983 and state law. Specifically, plaintiffs claim that they were deprived of their right to privacy under the Fourteenth Amendment—as well as federal, state, and common law—by the unauthorized disclosure of confidential information (Count I) and the unauthorized disclosure of the contents of child abuse reporting records (Count II). Plaintiffs also assert a claim under the Government Data Collection and Dissemination Practices Act, Virginia Code § 2.2-3800 et seq. (Count III). Plaintiffs seek compensatory and punitive damages in the amount of $690,000.00, pre- and post-judgment interest under Virginia law, injunctive relief, attorney's fees and costs, and any other appropriate relief. On February 23, 2016, defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on May 13, 2016, granted the motion to dismiss in part, and dismissed plaintiffs' claims against the Department. The court took the claims against Nester under advisement and allowed the parties to file supplemental authority as to plaintiffs' claims under § 1983. The motion has been fully briefed and is now ripe for disposition.

## Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive dismissal for failure to state a claim, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6)

3

motion, all well-pleaded allegations in the complaint are taken as true and all reasonable factual inferences are drawn in the plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, "[a]t bottom, a plaintiff must 'nudge [her] claims across the line from conceivable to plausible' to resist dismissal." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364-65 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. Although a complaint need not contain detailed factual allegations, it must contain more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In considering a Rule 12(b)(6) motion, the court may consider exhibits attached to or referred to in the complaint. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

## Discussion

Nester moves to dismiss the complaint, arguing that plaintiffs have failed to state a plausible claim under § 1983, and that she is entitled to qualified immunity. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of a right guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). If there is no violation of a federal right, there is no basis for a § 1983 action. Clark v. Link, 855 F.2d 156, 161 (4th Cir. 1988).

Here, by disclosing the unredacted records to Delashmit and Williams, plaintiffs contend that Nester violated their right to privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment, as well as federal, state, and common law. The Supreme Court of the United States has stated that there is no "general right to privacy" in the United States

4

Constitution, but that this area is "left largely to the law of the individual [s]tates." Katz v. United States, 389 U.S. 347, 351 (1967). Nevertheless, the Supreme Court has summarized its privacy jurisprudence into two "zones of privacy": (1) "individual interest in avoiding disclosure of personal matters," and (2) "the interest in independence in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 599-600 (1977). The second interest has "dominated the Supreme Court's privacy cases." Adams v. Drew, 906 F. Supp. 1050, 1054 (E.D. Va. 1995).

Although there is no clear rule for the scope of the first interest, the Supreme Court has stated that the personal rights guaranteed under the right to privacy "must be limited to those which are fundamental or implicit in the concept of ordered liberty." Paul v. Davis, 424 U.S. 693, 713 (1976) (internal quotation marks omitted). In addition, the United States Court of Appeals for the Fourth Circuit has limited the constitutional right to privacy to matters concerning marriage, contraception, family relationships, and child rearing and education. Walls v. City of Petersburg, 895 F.2d 188, 192 (4th Cir. 1990); see also United States v. McFillin, 713 F.2d 57, 60 (4th Cir. 1981) (holding that a constitutional right to privacy is "more properly raised in the realm of birth, death, intimate relationships, education of children, free exercise of religion and other rights of association the intrusion upon which affects an essential component of a person's dignity"). The Fourth Circuit has further stated that "[p]ersonal, private information in which an individual has a reasonable expectation of confidentiality is protected by one's constitutional right to privacy." Walls, 895 F.2d at 192. As such, "[t]he more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." Id.

The court finds that plaintiffs have failed to allege a cognizable § 1983 claim against Nester because they have not sufficiently alleged a constitutional right to privacy in the

5

information disclosed to Delashmit and Williams.[1] In this case, the information that plaintiffs alleged was protected included names, physical addresses, email addresses, birth dates, details and location of DM's counseling sessions, details of DM's sexual abuse accusations, and social security numbers. The court does not believe that this information is within any zone of privacy, as contemplated by the Supreme Court and the Fourth Circuit.

As an initial matter, the court notes that "the question is not whether individuals regard [this] information about themselves as private, for they surely do, but whether the Constitution protects such information." Adams, 906 F. Supp. at 1057. As to the personal contact information, the court cannot conclude that such information is protected under the narrow constitutional right to privacy. In Walls, the Fourth Circuit concluded that there is no reasonable expectation of privacy in information that is available within public records. 895 F.2d at 193. In another case, the Court noted that the information found in motor vehicle records is the "very sort of information to which individuals do not have a reasonable expectation of privacy." Condon v. Reno, 155 F.3d 453, 464 (4th Cir. 1998), rev'd on other grounds, 528 U.S. 141 (2000). The court believes that this kind of information certainly includes names, physical addresses, email addresses, telephone numbers, and birth dates, which are also "commonly provided to private parties." Id. at 465. As such, the court is not persuaded that plaintiffs' have a constitutional right to privacy in their personal contact information.

As to the medical information, specifically the nature and location of DM's counseling sessions, the court does not believe that there is a fundamental right to privacy in such information. As one district court stated, "there is no Supreme Court declaration that an individual's confidential medical information falls within a constitutionally protected 'zone of

---

[1] Because the court concludes that plaintiffs' complaint does not plausibly demonstrate a constitutional right that is enforceable under § 1983, it need not discuss whether Nester is entitled to qualified immunity.

6

privacy.'" Sherman v. Jones, 258 F. Supp. 2d 440, 442 (E.D. Va. 2003). In Whalen, the plaintiffs argued that they had a constitutional right to privacy in their medical information. 429 U.S. at 598. Without deciding whether the plaintiffs had such a right, the Supreme Court instead found that the state law at issue would not likely result in public dissemination of the plaintiffs' medical information and, therefore, could not constitute an invasion of any protected right under the Fourteenth Amendment. Id. at 600-02. As to Fourth Circuit precedent, "the Fourth Circuit has also declined invitations to declare a constitutional right to privacy in one's personal medical information." 258 F. Supp. 2d at 443. Furthermore, district courts within the Fourth Circuit have found that alleged violations of federal laws that concern the confidentiality of medical records are not actionable under § 1983. See, e.g., Switzer v. Thomas, No. 5:12CV00056, 2013 WL 693090, at *3 (W.D. Va. Feb. 25, 2013) (Welsh, J.), report and recommendation adopted, No. 5:12CV00056, 2013 WL 1145864 (W.D. Va. Mar. 19, 2013) (Urbanski, J.), aff'd, 535 F. App'x 312 (4th Cir. 2013) ("Since HIPAA creates no private cause of action and since there is no fundamental right of privacy in personal medical information, no cognizable cause of action has been stated against [the defendant]."); Williams v. Jones, No. 9:07-CV-3437-MBS-GCK, 2008 WL 948285, at *5 (D.S.C. Apr. 4, 2008) ("The undersigned cannot discern a right under HIPAA that the plaintiff could enforce pursuant to § 1983."). Even if this court could find that there is a fundamental right to privacy in medical information, the specific materials that Nester provided to Delashmit and Williams merely stated that one of the individuals who reported DM's sexual abuse allegations to the Department was DM's therapist, and that DM was participating in counseling sessions to "begin the process of healing after suffering abuse and neglect." Compl. ¶ 66. The court does not believe that such information is an "essential component" of plaintiffs' dignity or falls within the narrow categories that receive constitutional protection. Therefore, the

7

court concludes that plaintiffs' do not have a fundamental right to privacy in this medical information.

As to the details of DM's sexual abuse allegations, the court believes that such information is also not constitutionally protected under any right to privacy possessed by plaintiffs. To the extent that plaintiffs rely on the statutory and regulatory scheme concerning the confidentiality of child abuse records as a basis for their reasonable expectation of privacy in such information, the court believes that such argument is without merit. In fact, when considering the right to privacy in an individual's prescription drug use, the Supreme Court noted that "[t]he right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures." Whalen, 429 U.S. at 605. The Court recognized that "in some circumstances that duty arguably had its roots in the Constitution," but ultimately found that the state's "statutory scheme, and its implementing administrative procedures, evidence a proper concern with, and protection of, the individual's interest in privacy." Id. The Fourth Circuit has also noted that "[w]hen there are precautions to prevent unwarranted disclosure, an individual's privacy interest is weakened." Walls, 895 F.2d at 194. In a similar case, the Fourth Circuit held that there was no constitutional injury in the confidential maintenance of "unsubstantiated" or "ruled out" child abuse investigation reports. Hodge v. Jones, 31 F.3d 157, 167 (4th Cir. 1994). The Court, quoting Whalen, noted that the state's statutory scheme properly protected the plaintiffs' privacy concerns, and, thus, it declined to "expand the penumbral privacy rights beyond the fixed boundaries of established precedent." Id. at 166-67; see also Adams, 906 F. Supp. at 1057 ('[M]erely because an interest is protected by the legislature does not mean that it is also safeguarded by the Due Process Clause."). The Court further explained that these child abuse investigative reports were not accessible to the

general public, and that the risk of negligent or improperly-motivated disclosure "cannot by itself implicate a constitutional privacy right." Id. at 166.

In light of this precedent, the court believes that the existence of an extensive statutory and regulatory scheme in Virginia, which adequately protects the confidentiality of child abuse investigation records, weakens plaintiffs' argument that they have a fundamental right to privacy in such materials. In other words, such an extensive legislative scheme would be superfluous if individuals had a constitutional right to privacy in preventing disclosure such documents. Moreover, the court notes that Virginia's Administrative Code allows for those against whom allegations of child abuse are made to access "personal information related to himself which is contained in the case record." 22 Va. Admin. Code § 40-705-160. Although the court is not aware of any authority that has interpreted the phrase "personal information related to himself," the court believes that the specific allegations made against the accused could fall under this language, which would further weaken any right to privacy plaintiffs' might have in such information. Thus, the court does not believe that plaintiffs have stated a plausible constitutional privacy interest in the details surrounding DM's sexual abuse allegations.

Finally, as to the social security numbers, the court does not believe that such information is entitled to constitutional protection under any recognized right to privacy. As an initial matter, the court notes that the complaint merely states that Nester disclosed the social security numbers of "multiple parties," but does not specify whether plaintiffs are included in this group. Compl. ¶ 132(w). Therefore, the court is unable to conclude that plaintiffs have stated a constitutional privacy interest in <u>their</u> social security numbers. Although the Fourth Circuit has noted that there is the risk of a "serious invasion of privacy" that could result from the disclosure of an individual's social security number, the Court did not explicitly find that individuals have an

9

enforceable right to privacy in their social security number. Greidinger v. Davis, 988 F.2d 1344, 1354 (4th Cir. 1993). In fact, "the contention that disclosure of one's [social security] account number violates the right to privacy has been consistently reject[ed] in other related contexts." N.C. ex rel. Kasler v. Howard, 323 F. Supp. 2d 675, 679 (W.D.N.C.), aff'd sub nom. Kasler v. Howard, 78 F. App'x 231 (4th Cir. 2003) (quoting McElrath v. Califano, 615 F.2d 434, 441 (7th Cir.1980)). The court acknowledges that most district courts who have considered this issue were faced with situations in which the plaintiff was required to disclose his or her social security number to a state agency, rather than the disclosure of the information by the agency itself. Nevertheless, the court believes that this factual distinction is insignificant for its determination that there is no fundamental right to privacy in one's social security number. Therefore, the court concludes that plaintiffs have failed to demonstrate that they have a protected right to privacy in their social security numbers.

Although the court recognizes the sensitive nature of these materials, it does not believe that plaintiffs' right to privacy in preventing the disclosure of personal matters extends to such information, absent clear authority from the Fourth Circuit or Supreme Court. As such, the court concludes that plaintiffs have failed to state a plausible claim under § 1983. The motion to dismiss will be granted with respect to Counts I and II.

To the extent that plaintiffs argue that they have a right to recovery under state law, the court accordingly declines to exercise supplemental jurisdiction over any such claim. See 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction). Again, Virginia has implemented an extensive legislative scheme in order to protect the confidentiality of child abuse investigation records. In the interest of comity, the court will not interject itself into an

area that is the focus of several state laws and regulations. See Hodges, 31 F.3d at 167 (holding that the court "will not interfere with the state's concentrated efforts to implement an orderly and rational legislative scheme calculated to halt the growing problem of child abuse"); see also Payman v. Lee Cty. Cmty. Hosp., 338 F. Supp. 2d 679, 683 (W.D. Va. 2004) (Jones, J.) ("Comity advises against a federal court exercising jurisdiction over a matter more appropriately decided in state court."). Accordingly, the court will also grant the motion to dismiss with respect to Count III.

### Conclusion

For the foregoing reasons, the motion to dismiss will be granted.[2] Counts I and II will be dismissed, as the court believes that plaintiffs have failed to state a plausible claim for relief under § 1983. As to Count III, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claim, and that count will also be dismissed.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 8th day of July, 2016.

_/s/ Glen Conrad_
Chief United States District Judge

---

[2] In the event that the court is inclined to grant the motion to dismiss, plaintiffs request leave to amend their complaint. In a previous order, the court gave plaintiffs the opportunity to assert an independent cause of action under federal law. As plaintiffs have not done so, this request for leave to amend is denied.